UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD W. GOACHEE,

    Plaintiff,                                       Civil Action No. 18-CV-11829

vs.                                                     HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 19 and 25]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's decision denying in part his application for social security disability insurance benefits. An Administrative Law Judge ("ALJ") held a hearing in July 2015 (Tr. 252-72) and issued a decision denying benefits in November 2015 (Tr. 395-406). In November 2016, on the parties' stipulation, the Court remanded the matter for reevaluation of the medical evidence and for another hearing (Tr. 419-23). The ALJ held a second hearing in June 2017 (Tr. 316-73). In July 2017, she issued a "partially favorable" decision finding that plaintiff was not disabled before July 14, 2016, but that he has been disabled since that date (Tr. 290-307). This became defendant's final decision in July 2018 when the Appeals Council denied plaintiff's request for review (Tr. 2-4). Plaintiff challenges

this decision insofar as it denied her claim for the period from April 28, 2014 (the alleged disability onset date) through July 14, 2016.

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence. As the Sixth Circuit has explained, the Court

> must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *White*, 572 F.3d at 281 (citing 42 U.S.C. § 405(g)); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted); *see also Kyle*, 609 F.3d at 854 (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). Where the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record might support a contrary conclusion. *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). However, a substantiality of evidence evaluation does not permit a selective reading of the record. "Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations and quotation marks omitted).

*Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 640-41 (6th Cir. 2013).

At the time of the ALJ's most recent decision, plaintiff was 55 years old (Tr. 91, 306). He has a high school education (Tr. 258, 306) and work experience as a machine operator (Tr. 122, 258, 267). Plaintiff claims he has been disabled since April 2014 due to pain in his lower back and hips (Tr. 91, 121, 259). The ALJ found that since April 2014 plaintiff's severe impairments are "degenerative disc disease; degenerative joint disease bilateral hips; chronic pain syndrome; and L5-S1," and that beginning in July 2016 he also has "carotid artery stenosis and transischemic

accidents" (Tr. 298). During the period at issue, April 2014 to July 2016, the ALJ found that although plaintiff could not perform his past work, he had the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) except he could not stand and walk more than 4 hours in an 8-hour day; he could sit up to 6 of 8 hours; lifting is limited to 20 pounds occasionally and 10 pounds frequently; no pushing or pulling of levers or pedals with any of the extremities; kneeling, crouching, crawling, bending, climbing, squatting would be limited to occasional; he could never climb ropes, ladders or scaffolds; he would need a low stress environment defined as no quick decision making and no quick judgment required on the job.

(Tr. 299.) A vocational expert ("VE") testified in response to a hypothetical question that a person of plaintiff's age, education, and work experience, and who had this RFC, could perform certain light, unskilled jobs as a packer, sorter, or assembler (Tr. 368). The ALJ cited this testimony as evidence that work exists in significant numbers that plaintiff could have performed and concluded that he was not disabled prior to July 14, 2016 (Tr. 306-08). As noted, however, the ALJ found that plaintiff has been disabled since July 14, 2016, due to additional physical limitations caused by "his diagnosis of carotid artery stenosis and transischemic accidents" (Tr. 304).

Having reviewed the administrative record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence because her RFC evaluation of plaintiff is flawed. Since the hypothetical question incorporated this flawed RFC evaluation, it failed to describe plaintiff in all relevant respects and the VE's testimony given in response thereto cannot be used to carry defendant's burden to prove the existence of a significant number of jobs plaintiff was capable of performing during the period of time at issue.

The RFC evaluation is flawed for the following reasons. First, the ALJ failed to

3

consider the side effects of plaintiff's medications. The record indicates that during the relevant period plaintiff took Norco (Vicodin) and Diazepam (Valium) on a daily basis, the Norco up to three times per day (Tr. 152, 173, 200, 240, 1033, 1087, 1135). Periodically, plaintiff was also taking Neurontin, Lyrica, and Cymbalta (Tr. 205). On his function report, dated July 2014, plaintiff indicated that the Diazepam makes him feel tired (Tr. 143), and in August 2015 plaintiff's primary treating physician, Dr. Hyman, indicated that plaintiff experiences drowsiness from the Norco (Tr. 235).

The ALJ's failure to make any findings as to this issue is an error requiring remand, as the Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must determine which medications plaintiff was taking during the relevant time period; make findings as to the nature and severity of these medications' side effects, if any; adjust her findings as appropriate regarding plaintiff's RFC; and incorporate these findings in proper hypothetical questions to the VE.

Second, the RFC assessment in this matter is flawed because the ALJ did not explain adequately why she gave "little weight" to the opinions of plaintiff's treating physician, Dr. Hyman, but "significant weight" to the opinion of the non-examining medical consultant, Dr. Amusa (Tr. 304). Dr. Hyman, who has treated plaintiff for his back and hip pain every two to three months since March 2013 (Tr. 235), indicated in April 2014 that plaintiff was "[u]nable to return to employment

4

at this time" due to chronic low back pain and facet arthropathy[1] (Tr. 163). Similarly, Dr. Hyman indicated in December 2014 that plaintiff was "[u]nable to return to employment at this time" due to "chronic LBP, radicular pain" (Tr. 160). On both forms, Dr. Hyman stated that plaintiff had "failed conservative treatment" (Tr. 160, 163). In September 2014, Dr. Hyman noted he was seeing plaintiff

> regarding chronic low back pain. MRI is showing significant facet arthropathy and some mild neural foraminal stenosis. He has mechanical back pain. He has failed conservative treatment including lateral branch, medial branch, sacroiliac injections, therapy, Neurontin, Lyrica, and Cymbalta. He is stable on Norco 10/325 t.i.d. and Valium at bedtime to control his symptoms.

(Tr. 205.)

In June 2015, Dr. Hyman indicated that plaintiff is unable to work and that his pain would "constantly" interfere with his attention and concentration (Tr. 194-97). In August 2015, Dr. Hyman completed a Physical Residual Functional Capacity Questionnaire and indicated, among other things, that plaintiff could walk one block before needing to rest; that he could sit for at most forty-five minutes before needing to get up; that he could stand for ten minutes before needing to sit down or walk around; that during an eight-hour work day he could sit for a total of less than two hours and stand/walk for a total of less than two hours; that every ten minutes he would need to walk for approximately ten minutes; that he would need to be able to shift position at will from sitting, standing or walking; that he could lift up to ten pounds rarely; and that he is likely to be absent from work more than four days per month due to his impairments or treatment (Tr. 236-39).

---

[1] "Facet arthropathy is a form of low back pain caused by osteoarthritis in the facet joints (also known as zygapophyseal joints) in the spine." https://www.hss.edu/condition-list_facet-arthropathy.asp (visited Mar. 11, 2019).

The ALJ rejected Dr. Hyman's restrictions and gave his opinions "little weight" with the following explanation:

> In this case, Dr. Hyman's opinions are not given controlling weight as they are not well supported by objective imaging or clinical findings and is [sic] inconsistent with the opinion of the testifying medical expert, who has had an opportunity to review all relevant medical records.
>
> . . . As to the assessment containing functional limitations, I find the restrictions to be inconsistent with the evidence of record. . . . [T]he claimant's objective imagining [sic] consistently showed mild degenerative changes. His physical exams also consistently noted normal gait or slightly impaired gait (as indicated by a slight limp). The claimant also testified he does light housekeeping and is able to go to the grocery store. The claimant only reported flare-ups or aggravation when attempting to do his old work or when partaking in strenuous activity such as changing a tire.

(Tr. 303.) The ALJ also pointed to the opinion of the non-examining medical consultant, Dr. Amusa, who "testified that the claimant's impairments prior to July 2016 would cause him to be limited to a reduced range of light work . . . ." (Tr. 304). The ALJ adopted Dr. Amusa's opinion that from 2014 to July 2016 plaintiff could lift up to twenty pounds and that he could "stand and/or walk four out of eight, sit for six" (Tr. 347, 368).

The ALJ's statement of reasons does not comport with the treating physician rule, which requires ALJs to

> give controlling weight to a treating physician's opinion as to the nature and severity of the claimant's condition as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26, 2012). The premise of the rule is that treating physicians have the best detailed and longitudinal perspective on a claimant's condition and impairments and this perspective "cannot be obtained from objective medical findings alone." 20 C.F.R. § 416.927(d)(2) (language moved

6

> to 20 C.F.R. § 416.927(c)(2) on March 26, 2012). Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Rogers*, 486 F.3d at 242. In all cases, the treating physician's opinion is entitled to great deference even if not controlling. *Id.* The failure to comply with the agency's rules warrants a remand unless it is harmless error. *See Wilson*, 378 F.3d at 545–46.

*Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). In the present case, Dr. Hyman's restrictions are supported by objective evidence[2] and are not inconsistent with the other substantial evidence in the record. The only allegedly inconsistent findings identified by the ALJ are notations in the record of plaintiff's "normal gait or slightly impaired gait" (Tr. 303), but she did not explain why a person with chronic back pain would necessarily have an abnormal gait.

Further, the ALJ unfairly characterized plaintiff's testimony by asserting that he "testified he does light housekeeping and is able to go to the grocery store" (Tr. 303). Plaintiff

---

[2] The ALJ erred in asserting that plaintiff's imaging "consistently showed mild degenerative changes" (Tr. 303). An MRI of plaintiff's lumbar spine in January 2013 was interpreted as follows:

> L4-L5: There is mild broad-based disc bulge extending to the right neuroforamina and abutting and perhaps mildly compressing the right L4 nerve root. Mild degenerative changes of the facet joints are seen bilaterally.
> L5-S1: There is a diffuse disc bulge with facet degenerative changes and abutting the exiting right L5 nerve root. Mild degenerative changes of the facet joints are seen bilaterally.

(Tr. 209.) One of Dr. Hyman's colleagues, Dr. Nwagwu, read this MRI as showing "positive disc herniations at L4-L5" (Tr. 208), and Dr. Hyman read it as showing "significant facet arthropathy and some mild neural foraminal stenosis" (Tr. 205). "[M]ild right L5 radiculopathy" was confirmed by EMG in 2013 (Tr. 191). X-rays in May 2015 showed "[v]ery early degenerative changes in bilateral hip joints," "[m]ild degenerative change in the SI joins and pubic symphysis," and osteopenia (Tr. 198).

7

testified that "I try doing little stuff like I'll try to start doing the dishes. She'll [plaintiff's wife] usually finish them. I'll try to do some dusting, maybe vacuuming small rooms or something but she pretty much handles everything" (Tr. 261-62). Plaintiff testified that he does no cooking, laundry,

or yard work (Tr. 262). He goes grocery shopping with his wife, but only for twenty or twenty-five minutes at a time (Tr. 263). These minimal activities are not evidence that a reasonable person would find to be inconsistent with Dr. Hyman's restrictions.[3] Nor would a reasonable person dismiss those restrictions simply because plaintiff experienced a "flare up" of his back pain when he attempted to work (Tr. 332-34) or change a tire (Tr. 326, 1075, 1259). The issue in this case is whether plaintiff's back and hip pain prevent him from doing light-level work, not how "flare ups" are precipitated.

Moreover, the ALJ neglected to follow *Gentry* which required her to consider a number of factors when, as here, she decided not to give plaintiff's treating physician's opinions controlling weight. As noted above, *Gentry* stated that "[e]ven when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors." 741 F.3d at 723.

Instead of considering these factors, and instead of giving proper deference to Dr.

---

[3] In his function report dated July 2014, plaintiff described his daily activities as follows: "Get on computer for short period, watch TV for short period, pace to try to get comfortable, lay down on stomach in bed, try to do dishes, have to take break, sit down or lay down" (Tr. 137). Regarding his ability to do housework, plaintiff stated, "I can run vac[]uum in small room, wipe counter tops, . . . do some dishes, sweep floor" for "quick periods of time, maybe twice a week" (Tr. 138). He stated he shops twice per week "as quick as possible" for household needs (Tr. 139).

8

Hyman's opinions, the ALJ rejected Dr. Hyman's opinions and gave "significant weight" to the opinion of the medical advisor, Dr. Amusa, who did not examine plaintiff and based her opinion solely on her review of the medical records. When asked why she rejected Dr. Hyman's more limiting restrictions, and why she believed plaintiff could stand and/or walk for four hours during an eight-hour workday, Dr. Amusa testified: "Again, what I've seen in the evidence is that the gait are [sic] normal, that the[] claimant does not require an assistive device. I do see in the record that the claimant went fishing, that the claimant is washing dishes" (Tr. 348-49). Elsewhere, referring to Dr. Hyman's restrictions at Tr. 235-39, Dr. Amusa testified, "I guess I don't see the limitations that his pain management doctor placed in 6-F. I just don't see support when I look at the record in its entirety" (Tr. 354).

Dr. Amusa's opinion regarding plaintiff's limitations is so poorly justified that no reasonable person would accept it as a basis for rejecting the more limiting restrictions imposed by Dr. Hyman. Dr. Amusa did not explain why plaintiff's generally normal gait and the fact that he does not use a cane support her conclusion that plaintiff can sit and/or stand for four hours and sit for six hours. Nor would any reasonable person accept Dr. Amusa's restrictions, and reject those of Dr. Hyman, on the grounds that plaintiff "went fishing" and "is washing dishes." The only mention in the record of fishing is a hospital record dated August 14, 2016, stating that plaintiff "was fishing" when he "fell and lost consciousness" (Tr. 692). There is no indication of how long plaintiff had been fishing or how long he had been standing or walking or sitting. Nor, as noted above, is the fact that plaintiff occasionally washes dishes a reasonable or logical basis for rejecting Dr. Hyman's restrictions.

While Dr. Amusa indicated she did not "see support" for Dr. Hyman's restrictions,

9

the fact remains that plaintiff has objectively demonstrated back and hip impairments which, as the ALJ concedes, "could reasonably be expected to produce the alleged symptoms" (Tr. 298, 300). The ALJ specifically found that plaintiff "does have severe pain" (Tr. 302). Both the ALJ and Dr. Amusa further concede that plaintiff's ability to work is significantly limited by these impairments. The dispute in this case boils down to whether the ALJ is bound by the treating physician's opinion regarding the extent of those limitations or whether she may disregard those limitations based on the opinion of the medical advisor. Under *Gentry*, and under defendant's regulations, *see* 20 C.F.R. § 404.1527, the ALJ must defer to the treating physician if his opinion is both well supported and not contradicted by other substantial evidence. Both *Gentry* and this regulation recognize that "treating physicians have the best detailed and longitudinal perspective on a claimant's condition *and impairments and this perspective cannot be obtained from objective medical findings alone*." *Gentry*, 741 F.3d at 723 (emphasis added). In the present case, the ALJ has not adequately explained why she did not defer to Dr. Hyman. On remand, the ALJ must reexamine the entire record and, if she again decides to reject Dr. Hyman's restrictions and to rely instead on the restrictions suggested by Dr. Amusa, she must clearly explain her reasons for doing so with specific reference to the factors listed in *Gentry* and in § 404.1527.

Finally, the RFC assessment in this case is flawed because the ALJ neglected to explain why she failed to incorporate the additional limitations imposed by Dr. Hyman that Dr. Amusa did not directly reject or even discuss. As noted above, in addition to the limitations on the length of time plaintiff can sit, stand, and walk, which were the primary focus of Dr. Amusa's testimony, Dr. Hyman indicated that plaintiff must be allowed to change position and to walk around frequently, that he would need to take frequent unscheduled breaks, and that he would be likely to

10

miss more than four days of work per month due to his impairments or treatment (Tr. 237, 239). The VE testified that "all competitive employment" would be eliminated by the need to take unscheduled breaks or to miss even two days of work per month (Tr. 369). The ALJ did not include a sit/stand option in her RFC assessment, and she did not explain why she tacitly rejected Dr. Hyman's additional restrictions. On remand, the ALJ must reexamine all of Dr. Hyman's restrictions and make any necessary revisions to her RFC assessment of plaintiff and her hypothetical questions to the VE.

For these reasons, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence. Remanding the matter for an award of benefits would not be appropriate at this time because the record, in its current state, is not such that "proof of disability is overwhelming or . . . proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Rather, the matter must be remanded so that the record may be further developed to address the deficiencies noted above regarding the time frame at issue, i.e., from April 28, 2014, to July 14, 2016. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings to address the deficiencies noted above. This is a sentence four remand under § 405(g).

s/Bernard A. Friedman
Dated: March 14, 2019            BERNARD A. FRIEDMAN
Detroit, Michigan                SENIOR UNITED STATES DISTRICT JUDGE

**<u>CERTIFICATE</u> <u>OF</u> <u>SERVICE</u>**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 14, 2019.

<u>s/Johnetta M. Curry-Williams</u>
Case Manager
